FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

AO 241
(Rev. 01/15)

2021 FEB 24 AM 10: 23                    Page 2

OFFICE OF THE CLERK

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| United States District Court | District: | Nebraska | 8:21cv66 |
|---|---|---|---|

| Name (under which you were convicted): Lenado S. Summage | Docket or Case No.: A-19-1129 CR13-1915 |
|---|---|

Lenado Summage

| Place of Confinement: Nebraska State Penitentiary | Prisoner No.: 81379 |
|---|---|

Nebraska State Prison

81379

| Petitioner (include the name under which you were convicted) | Respondent (authorized person having custody of petitioner) |
|---|---|
| Lenado S. Summage        v. | State of Nebraska |

The Attorney General of the State of: Doug Peterson

RECEIVED

**PETITION**

FEB 2 4 2021

CLERK
U.S. DISTRICT COURT

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    The District Court of Douglas County

    Omaha, Nebraska

    (b) Criminal docket or case number (if you know): CR-13-1915

2.  (a) Date of the judgment of conviction (if you know): September 26, 2014

    (b) Date of sentencing: December 5, 2014

3.  Length of sentence: 25-30 years    25 to 30 years

4.  In this case, were you convicted on more than one count or of more than one crime?  ☐ Yes  ☒ No

5.  Identify all crimes of which you were convicted and sentenced in this case: NA

    Summage was charged on July 3, 2013, with sexual assault in the first degree

    in violation on Neb. Rev. Stat. § 28-319(1)(a) a class II felony.

6.  (a) What was your plea? (Check one)

    ☒ (1)  Not guilty       ☐ (3)  Nolo contendere (no contest)

    ☐ (2)  Guilty           ☐ (4)  Insanity plea

AO 241
(Rev. 01/15)

Page 3

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

(c) If you went to trial, what kind of trial did you have? (Check one)

    ☒ Jury    ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

    ☐ Yes    ☒ No

8. Did you appeal from the judgment of conviction?

    ☒ Yes    ☐ No

9. If you did appeal, answer the following:

(a) Name of court:   Nebraska Court of Appeals

(b) Docket or case number (if you know):   A-15-000005

(c) Result:   affirmed Summage's conviction in an unpublished opinion

(d) Date of result (if you know):   November 17, 2015

(e) Citation to the case (if you know):   N/A

(f) Grounds raised:   Summage assigns that the trial court erred in (1) failing to grant his motion to dismiss at the close of the State's case because the State presented insufficient evidence to support a conviction; (2) admitting hearsay evidence regarding the sexual assualt; and (3) imposing an excessive sentence.

(g) Did you seek further review by a higher state court?   ☒ Yes    ☐ No

    If yes, answer the following:

    (1) Name of court:   Nebraska Supreme Court

    (2) Docket or case number (if you know):   N/A    A-15-000005

    (3) Result:   Denied

    (4) Date of result (if you know):   N/A    January 29, 2016

(5) Citation to the case (if you know):            N/A

(6) Grounds raised:            Summage argued that the district court erred in

failing to grant his motion to dismiss at the close of the State's

case-in-chief; in admitting hearsay evidence; and in imposing an

excessive sentence.

(h) Did you file a petition for certiorari in the United States Supreme Court?            ☐  Yes        ☒  No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10.  Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

concerning this judgment of conviction in any state court?            ☐  Yes        ☒  No

11.  If your answer to Question 10 was "Yes," give the following information:

(a)        (1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐  Yes        ☐  No

(7) Result:

(8) Date of result (if you know):

AO 241
(Rev. 01/15)

Page 5

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes     ☐ No

(7) Result: _____

(8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

AO 241
(Rev. 01/15)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes     ☐ No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application,

or motion?

(1) First petition:      ☒ Yes     ☐ No

(2) Second petition:   ☒ Yes     ☐ No

(3) Third petition:     ☒ Yes     ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

   **CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:**   The evidence adduced by the state was insufficient to prove that the Petitioner was guilty of sexual assault in the first degree.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): Evidence concerning the vehicle excludes Summages as the person who garvey described as picking her up blocks away from the convenience store. The video in evidence shows both Mr. Summage and the vehicle he was in that evening. The video unequivocally shows that he was in a metallic, gold colored car with no front license plate. The record is devoid of any evidence showing anything otherwise. Further, state's witness Jimerson testified in accordance with video that Summage was driving a metallic gold, Monte Carlo.

(b) If you did not exhaust your state remedies on Ground One, explain why:

AO 241
(Rev. 01/15)

(c)    **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ☐ No

    (2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☑ Yes    ☐ No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition:   Postconviction Relief Petition

    Name and location of the court where the motion or petition was filed:   District Court of Douglas

    County - Omaha, Nebraska

    Docket or case number (if you know):   CR 13-1915

    Date of the court's decision:  November 1, 2019

    Result (attach a copy of the court's opinion or order, if available):   Denied

_____

    (3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☑ No

    (4) Did you appeal from the denial of your motion or petition?    ☑ Yes    ☐ No

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:   Nebraska Court of Appeals

    Docket or case number (if you know):  A-19-1129

    Date of the court's decision:   November 5, 2020

    Result (attach a copy of the court's opinion or order, if available):   affirmed

_____

    (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

AO 241
(Rev. 01/15)

Page 8

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND TWO:** The District Court erred in allowing the sane nurse to testify as to out of court statements made by Garvey

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): State's witness Jennifer Tran testified that she is a SANE, sexual assault nurse examiner, who, besides medical care, also provides "forensic care" in the form of collection of evidence for the police (279:1-15). Over objection, she was allowed to testify as to statements unrelated to treatment and diagnosis of her medical condition such as a description of her assailant, the car ride, the presence of a threat, the location of the assault, in the city and offers to buy a bus ticket (288:23-290:16). It is clear t hat this testimony included the recitation of out of court statements offered to prove the truth of the matter asserted. It is also clear that they were not properly admissible under the medical exception to the hearsay rule.

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☒ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   Postconviction Relief Petition

Name and location of the court where the motion or petition was filed:   District Court of Douglas County - Omaha. Nebraska

Docket or case number (if you know):   CR 13-1915

Date of the court's decision:   November 1, 2019

Result (attach a copy of the court's opinion or order, if available):   Denied

_____

(3) Did you receive a hearing on your motion or petition?          ☐ Yes   ☒ No

(4) Did you appeal from the denial of your motion or petition?      ☒ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☒ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:   Nebraska Court of Appeals

_____

Docket or case number (if you know):   A-19-1129

Date of the court's decision:   November 5, 2020

Result (attach a copy of the court's opinion or order, if available):   affirmed

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two : _____

_____

_____

_____

**GROUND THREE:**   Received ineffective assistance when his trial counsel; (1) failed to
pursue a statutory speedy trial violation; (2) failed to file a motion to suppress the
victim's in-court identification testimony; (3) failed to investigate or present alibi evidence;

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(1) Summage has a statutory right to speedy trial pursuant to § 29-1207; On May 27, 2014,
Summage filed a pro se Motion to Dismiss for Violation of Speedy Trial Rights with the
Clerk of the district court in Douglas County, Nebraska; No hearing was held and there is
nothing available in the record that shows Summages withdraw that motion either by himself
or through counsel; At the time of filing the Motion to Dismiss 317 days had elepsed from
the filing of the information on July 3, 2013. (Counsel filed a motion to Exclude Testimony
on May 15, 2014, arguably stopping the speedy trial clock on May 16, 2014). (2) The victim

in this case testified as a witness for the State. Despite previously being unable
to identify Summage as her attacker in a photo line-up presented to her by law
enforcement, and not being able to recall specifics of the attacker just previous
to trial, she idenified Summage as her attacker for the first time at trial.
Counsel for Summage failed to move to suppress an in-court identification of Summages
as unduly suggestive as the identification did not possess sufficient aspects of
reliability. As a result the in-court identification denied Summage his rights to
due process under the 5th and 14th Amendment to the United States Constitution and
Article 1 Section 3 of the Nebarska Constitution. (3) On August 5, 2014, counsel
filed a Notice of Alibi with the Clerk of the Douglas County District Court. No alibi
witness was presented at the time of trial as a witness for the defense. Counsel failed
to interview the alibi witness, Shaquita Arps (Bennett) as requested by Summage. Had
counsel made reasonable efforts at investigating said witness, counsel would have
learned that on the night of the sexual assault Summage had been with her during at
least part of the approximately two-hour time period the victim claimed she was in the
attacker's car. Defense counsel has an affirmative duty to consult with the client,
to investigate the facts, including facts relating to possible defense, and to prepare
for trial. (4) Defense counsel has an affirmative duty to consult with the client, to
investigate the facts, including facts relating to possible defense, and to prepare
for trial. Amanda Jimerson testified for the State regarding the events that occurred
on the night the victim in this case was sexually assaulted. Ms. Jimerson was inter-
viewed by police, was referenced in police reports made part of the discovery in this
case and was endorsed as a witness by the State. Jimerson testified as a witness for
the State that she talked to Summage regularly and on the night in question had been
conversing with him outside her place of employment. They were outside because Summage
had brought a vehicle and Jimerson wanted to talk about it. Counsel failed to invest-
igate, depose and question Jimerson about the presence of a child's cae safety seat
in the back seat of Summage's vehicle after being informed by Summage that Jimerson
did in fact see the car seat and congratulated him on the upcoming arrival of his child
on the night in question. Had counsel properly investigated, interviewed, deposed or
questioned Jimerson at the time of trial counsel would have been able to confirm the
presence of a child's car safety seat in the back of Summage's vehicle. (5) during
closing argument the attorney for the State improperly vouched for the victim's
testimony at trial. In the context of the length and detail of her medical examination
after the assault that prosecutor stated: "Someone making that up does not do that."
Implying that the witness was truthful. The prosecutor stated "Everything she had to

(Cont: Page-9)

go through is bad. Nothing good. But she did it. Why? Because it happened. For all of those reasons, and more, [the victim] is believable. [The victim] is credible as to what happened that night. (BOE: 329:13-330:20). As a result Summage received assistance of counsel in violation of his rights under the 6th and 14th Amendments to the United States Constitution and Article I section 1, 3 and 11 of the Nebraska Constitution and is entitled to a hearing to present  relevant evidence and is entitled to relief in this matter.  (Summage's counsel did not object).

- 2 -

AO 241
(Rev. 01/15)

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

_____

(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☒ Yes     ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes     ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   Postconviction Relief Petition

Name and location of the court where the motion or petition was filed:   District Court of Douglas

County - Omaha, Nebraska

Docket or case number (if you know):   CR 13-1915

Date of the court's decision:   November 1, 2019

Result (attach a copy of the court's opinion or order, if available):   Denied

_____

(3) Did you receive a hearing on your motion or petition?                    ☐ Yes     ☒ No

(4) Did you appeal from the denial of your motion or petition?               ☒ Yes     ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☒ Yes     ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:   Nebraska Court of Appeals

_____

Docket or case number (if you know):   A-19-1129

Date of the court's decision:   November 5, 2020

Result (attach a copy of the court's opinion or order, if available):   affirmed

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

_____

**GROUND FOUR:**   Summage Received Ineffective Assistance of Appellate Counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):   Summage incorporates by reference Grounds I through III above; To the extent any of these claims/grounds could have been raised on direct appeal and were not, appellate counsel provide ineffective assistance of counsel in violation of Summage's rights under the 6th and 14th Amendments to the U.S. Constitution and Article I sections 1,3 and 11 of the Nebraska Constitution where counsel failed to raise all meritorious claims on appeal and abandoned errors clear on the record.

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☒  Yes   ☐  No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

   ☒  Yes   ☐  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   Postconviction Relief Petition

AO 241
(Rev. 01/15)

Name and location of the court where the motion or petition was filed:   District Court of Douglas
County - Omaha, Nebraska

Docket or case number (if you know):   CR 13-1915

Date of the court's decision:   November 1, 2019

Result (attach a copy of the court's opinion or order, if available):   Denied

(3) Did you receive a hearing on your motion or petition?   ☐ Yes   ☒ No

(4) Did you appeal from the denial of your motion or petition?   ☒ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☒ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:   Nebraska Court of Appeals

Docket or case number (if you know):   A-19-1129

Date of the court's decision:   November 5, 2020

Result (attach a copy of the court's opinion or order, if available):   affirmed

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

AO 241
(Rev. 01/15)

13.  Please answer these additional questions about the petition you are filing:

(a)  Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?  ☒ Yes   ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

_____

_____

_____

(b)  Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

_____

_____

_____

14.  Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?   ☐ Yes   ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

_____

15.  Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?   ☐ Yes   ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

_____

_____

_____

AO 241
(Rev. 01/15)

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:    Thomas C. Riley and Cheryl M. Kessell

(b) At arraignment and plea:    Thomas C. Riley and Cheryl M. Kessell

(c) At trial:    Thomas C. Riley and Cheryl M. Kessell

(d) At sentencing:    Thomas C. Riley and Cheryl M. Kessell

(e) On appeal:    Thomas C. Riley and Cheryl M. Kessell

(f) In any post-conviction proceeding:    Jerry M. Hug

(g) On appeal from any ruling against you in a post-conviction proceeding:    Jerry M. Hug

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    ☒ Yes   ☐ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

United STATES District court District of Nebraska   111 S 18TH Plaza Rm. 806 Omaha Neb. 68102 - Bureau of Prisons

(b) Give the date the other sentence was imposed:    Dec 18 - 2014

(c) Give the length of the other sentence:    (24) months

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    ☒ Yes   ☐ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

AO 241
(Rev. 01/15)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)   A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

   (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

   (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241
(Rev. 01/15)

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:   Remand back to the District Court

 for an evidentiary hearing and/or New Trial.

or any other relief to which petitioner may be entitled.

s/Lenado Summage
_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on    2/16/21    (month, date, year).

Executed (signed) on    2/16/21    (date).

s/Lenado Summage
_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____

_____

_____



**CLERK OF THE NEBRASKA SUPREME COURT
AND NEBRASKA COURT OF APPEALS**
2413 State Capitol, P.O. Box 98910
Lincoln, Nebraska 68509-8910
(402) 471-3731
FAX (402) 471-3480

January  6, 2021

Jerry M Hug
jerry.hug@gmail.com

**IN CASE OF:** A-19-001129, State v. Lenado S. Summage
**TRIAL COURT/ID:** Douglas County District Court CR13-1915

**The following filing:** Petition Appellant for Further Review
    Filed on 12/07/20
    Filed by appellant Lenado S Summage #81379

**Has been reviewed by the court and the following order entered:**

    Petition of appellant for further review denied.


                Respectfully,

                Clerk of the Supreme Court
                  and Court of Appeals

IN THE NEBRASKA COURT OF APPEALS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR
PERMANENT PUBLICATION AND MAY NOT BE CITED
EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

FILED
NOV 05 2020
NEBRASKA SUPREME COURT
COURT OF APPEALS

| | | |
|---|---|---|
| State of Nebraska, | ) | No. A-19-1129. |
| Appellee, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND** |
| | ) | **JUDGMENT ON APPEAL** |
| Lenado S. Summage, | ) | |
| Appellant. | ) | |

PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Lenado S. Summage appeals from the order of the district court
for Douglas County denying his motion for postconviction relief
following an evidentiary hearing. He argues that the district court
erred when it concluded that his trial counsel did not provide
ineffective assistance. For the reasons that follow, we affirm.

### BACKGROUND

In September 2014, Summage was convicted of first degree
sexual assault after a jury trial. The district court subsequently
sentenced him to 25 to 30 years' imprisonment. The background of
this case is summarized in Summage's direct appeal to this court.
See *State v. Summage*, No. A-15-005, 2015 WL 7261674 (Neb. App.

- 1 -



000117427NSC

Nov. 17, 2015) (not designated for permanent publication). On direct appeal, represented by the same counsel as at trial, Summage argued that the district court erred in failing to grant his motion to dismiss at the close of the State's case-in-chief; in admitting hearsay evidence; and in imposing an excessive sentence. This court affirmed Summage's convictions and sentences in a memorandum opinion filed November 17, 2015. See *id.* Summage's petition for further review was denied by the Nebraska Supreme Court on January 29, 2016.

On January 30, 2017, Summage filed a verified motion for postconviction relief and a motion for appointment of counsel. The district court appointed counsel, and, subsequently, Summage filed an amended motion for postconviction relief. As relevant to this appeal, Summage alleged that his trial counsel provided ineffective assistance in: (1) failing to pursue a statutory speedy trial violation; (2) failing to file a motion to suppress the victim's in-court identification testimony; (3) failing to investigate or present alibi evidence; and (4) failing to object to certain remarks made by the prosecutor during closing arguments.

The district court granted Summage an evidentiary hearing, and Summage presented his own testimony and the testimony of his trial counsel via deposition. The district court overruled

- 2 -

Summage's amended motion for postconviction relief on November 1, 2019. This appeal followed.

## ASSIGNMENT OF ERROR

Summage assigns that the district court erred when it overruled his motion for postconviction relief following an evidentiary hearing.

## STANDARD OF REVIEW

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflict in the evidence and questions of fact. *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019). An appellate court upholds the trial court's findings unless they are clearly erroneous. *Id.*

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *Id.* When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's conclusion. *State v. Beehn, supra.*

- 3 -

ANALYSIS

Summage argues that the district court erred in overruling his amended motion for postconviction relief. In his motion, he alleged that he received ineffective assistance when his trial counsel: (1) failed to pursue a statutory speedy trial violation; (2) failed to file a motion to suppress the victim's in-court identification testimony; (3) failed to investigate or present alibi evidence; and (4) failed to object to certain remarks made by the prosecutor during closing arguments.

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *Id.* The Nebraska Postconviction Act is intended to provide relief in those cases where a miscarriage of justice may have occurred; it is not intended to be a procedure to secure a routine review for any defendant dissatisfied with his or her sentence. *Id.*

To establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington, supra*, to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Ely*, 306 Neb. 461, 945 N.W.2d 492 (2020). Next, the defendant must show that counsel's deficient

- 4 -

performance prejudiced the defense in his or her case. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

Trial counsel is afforded due deference to formulate trial strategy and tactics, and an appellate court will not second-guess trial counsel's reasonable strategic tactics when reviewing claims of ineffective assistance of counsel. *State v. Lang*, 305 Neb. 726, 942 N.W.2d 388 (2020).

*Speedy Trial.*

Summage argues that his trial counsel was ineffective for failing to pursue a statutory speedy trial violation. In its order denying Summage's motion for postconviction relief, the district court found that defense counsel had not been ineffective because "sufficient tolling of the speedy trial clock was evidence to bring the defendant to trial within six months of the Information being filed."

When a defendant alleges he or she was prejudiced by trial counsel's failure to properly assert the defendant's speedy trial rights, the court must consider the merits of the defendant's speedy trial rights under *Strickland*. *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018). Only if a motion would have resulted in the defendant's absolute discharge, thus barring a later trial

and conviction, could the failure to move for discharge be deemed ineffective assistance. *Id.*

To calculate the deadline for trial for speedy trial purposes, a court must exclude the day the State filed the information, count forward 6 months, back up 1 day, and then add any time excluded under Neb. Rev. Stat. § 29-1207(4) (Reissue 2016). See *State v. Collins, supra.* In this case, the original information was filed on July 3, 2013. Therefore, the speedy trial deadline before adding any excluded time was January 2, 2014. Summage's trial began on September 22, 2014, 262 days beyond the 6-month statutory period. We thus consider whether at least 262 days are properly excluded under § 29-1207(4) from the speedy trial calculation.

The State argues that there were three periods of excludable time pursuant to § 29-1207(4). First, on August 8, 2013, Summage requested a continuance until September 11, 2013, which extended the trial deadline by 34 days. Summage acknowledges that this period should be excluded.

The record further shows that on September 16, 2013, Summage filed a motion seeking production of the victim's mental health records pursuant to *State v. Trammell*, 231 Neb. 137, 435 N.W.2d 197 (1989). On April 9, 2014, the district court disposed of the *Trammell* motion by ordering the State to provide the victim's mental health records to Summage. Summage argues that only part of

this time period is excludable for speedy trial purposes, because he claims that at least some of the waiting period was caused by the State's negligent failure to produce the records for in camera review by the district court. However, there was no evidence presented at the evidentiary hearing that showed negligence by the State. Moreover, the plain terms of § 29-1207(4)(a) exclude all time between the time of the filing of the defendant's pretrial motions and their final disposition, regardless of the promptness or reasonableness of the delay. *State v. Turner*, 252 Neb. 620, 564 N.W.2d 231 (1997). We therefore agree with the State and conclude that the 205 days between the filing of Summage's *Trammell* motion and the court's order disposing of that motion should be excluded from the speedy trial calculation.

Finally, on May 15, 2014, Summage filed a motion in limine seeking to prevent the victim from testifying at trial. The district court ruled on the motion in limine on June 16, 2014. However, while the motion in limine was still pending, on May 27, 2014, Summage filed a pro se motion to dismiss, alleging that his right to a speedy trial had been violated. That motion was still pending on September 22, 2014, the date Summage went to trial. The State therefore argues that the entire period between May 15 and September 22 (103 days) should be excluded. We agree.

- 7 -

The record shows a total of 342 excludable days from the speedy trial calculation in this case. After adding the excluded time, the deadline for trial was December 11, 2014. Because the deadline for speedy trial purposes had not run, defense counsel could not have been ineffective for failing to file a motion for discharge on speedy trial grounds or otherwise failing to pursue Summage's speedy trial rights. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018). This argument fails.

*Motion to Suppress*.

Summage argues that he received ineffective assistance of counsel when his trial counsel failed to file a motion to suppress the victim's in-court identification testimony. He claims the identification of Summage by the victim was "unduly suggestive as the identification did not possess sufficient aspects of reliability." Brief for appellant at 13.

Generally, the due process clause places a check on the admission of eyewitness identification when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime. *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012) (discussing *Perry v. New Hampshire*, 565 U.S. 228, 132 S. Ct. 716, 161 L. Ed. 2d 694 (2012)). Suppression of identification evidence on the basis of undue

suggestion is appropriate only where the witness' ability to make an accurate identification is outweighed by the corrupting effect of improper police conduct. *Id.* When no improper law enforcement activity is involved, it suffices to test the reliability of identification testimony at trial, through the rights and opportunities generally designed for that purpose, such as the rights to counsel, compulsory process, and confrontation and cross-examination of witnesses. *Id.*

In this case, the victim was unable to identify Summage during a police photo lineup, and that photo lineup was not offered into evidence at trial. Rather, the victim identified Summage as her attacker during direct examination at trial. Summage argues that the fact that the victim had previously failed to identify him, that he was the only African American male present in the courtroom, and the substantial period of time between the date of the assault and the trial were grounds for the suppression of the identification testimony. However, these are not proper grounds for suppression under *State v. Nolan, supra.* It was the duty of the jury, not the judge, to assess the victim's credibility and determine whether her in-court identification of Summage was reliable under the circumstances.

We conclude that the district court correctly determined that Summage failed to prove that a motion to suppress the victim's

in-court identification testimony would have been successful. Accordingly, this argument fails.

*Alibi Witness.*

Summage argues that his trial counsel was ineffective for failing to investigate Shaquita Arps as a potential alibi witness. He claims that Arps would have been able to testify that she had been with Summage on the night the victim was assaulted.

Summage's trial counsel testified that she had not known of any person named Shaquita Arps prior to the time Summage initiated postconviction proceedings. Defense counsel testified that prior to trial, Summage named Tammy McCowin as a potential alibi witness, and she declined to call McCowin to testify for reasons of trial strategy. In contrast, Summage testified that he gave Arps' name and phone number to his counsel.

In his brief, Summage acknowledges that there was conflicting testimony on this matter at the evidentiary hearing. In its order, the district court specifically credited defense counsel's version of events. In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019). An appellate court upholds the trial court's findings unless they are clearly erroneous. *Id.*

- 10 -

We determine that the district court did not commit clear error when it found that Summage had told his trial counsel that McCowin, and not Arps, was a potential alibi witness. Accordingly, Summage's trial counsel could not have been ineffective for failing to investigate a witness she did not know existed. This argument fails.

*Closing Arguments.*

Finally, Summage argues that his trial counsel was ineffective when she failed to object to certain portions of the State's closing argument that referenced the victim's credibility. The district court found that the jury was appropriately instructed that they were the sole judges of witness credibility and, moreover, that the prosecutor had not given any personal opinions regarding the credibility of any witnesses during closing arguments.

Determining whether defense counsel was ineffective in failing to object to prosecutorial misconduct requires an appellate court to first determine whether the petitioner has alleged any action or remarks that constituted prosecutorial misconduct. *State v. Ely*, 295 Neb. 607, 889 N.W.2d 377 (2017). A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct. *Id.*

- 11 -

Prosecutors generally may not give their personal opinions on the veracity of a witness or the guilt or innocence of the accused. *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018). The principle behind this rule is that the prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own view of the evidence. *Id.* However, when a prosecutor's comments rest on reasonably drawn inferences from the evidence, the prosecutor is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the relative believability of witnesses for the State and the defense. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020). Thus, in cases where the prosecutor comments on the theory of defense, the defendant's veracity, or the defendant's guilt, the prosecutor crosses the line into misconduct only if the prosecutor's comments are expressions of the prosecutor's personal beliefs rather than a summation of the evidence. *Id.*

In this case, during closing arguments the prosecutor referenced the length of the sexual assault examination the victim underwent at the hospital and stated: "Someone making that up does not do that." The prosecutor then went on to say: "Everything [the victim] had to go through is bad. Nothing good. But she did it. Why? Because it happened. For all of those reasons, and more, [the

- 12 -

victim] is believable. [The victim] is credible as to what happened that night."

The district court determined that these remarks were not improper personal opinions of the prosecutor. In determining that Summage had not received ineffective assistance of counsel, the court further pointed to the jury instructions in this case. Specifically, the jury was instructed that it was the sole judge of credibility of the witnesses, and the jury instructions provided a list of eight nonexhaustive factors to consider when judging witness credibility. Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict. *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018).

The jury was properly instructed regarding its role as the sole judge of witness credibility. Further, it is clear that the prosecutor's comments did not amount to prosecutorial misconduct, because the prosecutor was permitted to highlight the believability of witnesses based on reasonably drawn inferences from the evidence presented at trial. See *State v. Price, supra*. Because we find no prosecutorial misconduct, Summage's trial counsel could not have been ineffective in failing to object to the State's closing argument. This argument fails.

## CONCLUSION

The decision of the district court denying Summage's motion for postconviction relief is affirmed.

AFFIRMED.

**2413 STATE CAPITOL BUILDING**
**LINCOLN, NE 68509**
**(402) 471-3731**

January 13, 2016

Cheryl M. Kessell
DOUGLAS COUNTY PUBLIC DEFENDER
H05 Civic Center
1819 Farnam Street
Omaha, NE 68183

**IN CASE OF:**  A-15-000005, State v. Lenado S. Summage

**The following internal procedural submission or filing by a party:**

Pet. Appellant Further Review **submitted or filed** 12/16/15

**has been reviewed by the court and the following order entered:**

Petition for further review denied.

Respectfully,

CLERK OF THE SUPREME COURT
AND COURT OF APPEALS

# IMPORTANT NOTICE

Due to the reduced number of cases awaiting submission to the Supreme Court and Court of Appeals, and as part of the courts' continuing efforts to reduce case-processing time, **future requests for brief date extensions will be closely scrutinized.** See Neb. Ct. R. App. P. §§ 2-106(F) and 2-109(A).  Pursuant to Neb. Ct. R. App. P. § 2-110(A), if an appellant's default for failure to file briefs is issued, appellant "is required to file a brief within 10 days after receipt of such notice.  Appellant's failure to file a brief in response to the notice of default subjects the appeal to dismissal."

## PLEASE BE ADVISED THAT THESE RULES WILL BE
## STRICTLY ENFORCED.

IN THE NEBRASKA COURT OF APPEALS

**FILED**

NOV **1 7** 2015

CLERK
NEBRASKA SUPREME COURT
COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. SUMMAGE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LENADO S. SUMMAGE, APPELLANT.

Filed November 17, 2015.   No. A-15-005.

Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Cheryl M. Kessell for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

PIRTLE, Judge.

## INTRODUCTION

Lenado S. Summage appeals his conviction and sentence for first degree sexual assault in the district court for Douglas County. He contends that there was insufficient evidence to support a conviction, that the trial court erred in admitting hearsay evidence, and that his sentence is excessive. Having found no merit to Summage's arguments, we affirm.

## BACKGROUND

On July 3, 2013, the State filed an information charging Summage with first degree sexual assault. The victim, F.G., was a 16 year-old female. Summage pled not guilty and a jury trial was held in September 2014.



The evidence at trial showed that on April 6, 2013, F.G. had an argument with her stepmother at their home and decided to run away. She took several items with her including $12 cash, razorblades, and her antidepressant medication. F.G. testified that she packed razorblades because she had been "self-harming" for a while, i.e. cutting herself with razorblades. She also testified that she had been taking her antidepressant medication as prescribed and that it did not affect her ability to remember things.

F.G. left her house around 11:30 p.m. and walked to a Kwik Shop gas station located at 72nd Street and Crown Point Avenue, Omaha, Nebraska. She entered the Kwik Shop, bought two energy drinks, and used the restroom.

Around the same time that F.G. was at the Kwik Shop, Summage entered the Kwik Shop. Summage briefly spoke with one of the cashiers, Amanda Jimerson, and then exited the store. Jimerson knew Summage because he was a frequent customer at the Kwik Shop and she often spoke to him when he came into the store. Jimerson testified that she did not know Summage's full name but knew him as "Leo." She testified that on the evening of April 6, 2013, Summage was wearing eye glasses and a distinctive "Jordan" hat. Jimerson also testified that she knew Summage had tattoos "all up his arm" and possibly on his neck. However, Summage was wearing a long-sleeved shirt on April 6.

Jimerson walked outside with Summage to see his new car, which was parked in front of the entrance. Jimerson testified the car was a gold two-door model with in-transit signs in the front and back windows. While outside, Summage and Jimerson talked about the car and the upcoming birth of Summage's daughter.

While Jimerson and Summage were standing by Summage's car, F.G. exited the Kwik Shop and began walking south. F.G. testified that she heard a man ask her how she was doing. When she looked back to say "fine," she noticed an African-American male standing next to a car talking to a woman, but did not recognize either of them. At that point, Summage told Jimerson that he should give "that girl" a ride because she should not be walking by herself that late at night. Jimerson responded by calling Summage a "weirdo." Although F.G. did not hear what Summage and Jimerson were talking about, she heard Jimerson say "what a weirdo" and assumed the comment was directed at her. F.G. walked south through the parking lot and past nearby apartment garages before eventually heading south on 72nd Street. Jimerson testified that at that point, she lost sight of F.G. and she re-entered the Kwik Shop and returned to her cash register.

A few minutes later, Summage got in his car and left the Kwik Shop parking lot, turning left onto Crown Point Avenue and then turning left onto 72nd Street and heading south.

Shortly after F.G. left the Kwik Shop, a car pulled up next to her while she was walking south on 72nd Street. The car initially had been traveling south on 72nd Street the same direction F.G was walking, but made a U-turn and pulled up next to her. F.G. noted the car had two doors and appeared to be dark in color; however it was close to midnight and the lighting was not very good.

F.G. testified that the driver and sole occupant of the car was an African-American male who was wearing glasses. The man, who was later identified as Summage, asked F.G. where she was going, and F.G. told him that she wanted to go to Wal-Mart. Summage offered to give F.G. a ride and she accepted.

After F.G. got in the car, Summage drove to a neighborhood near 78th Street to meet a friend. During the drive, F.G. and Summage engaged in conversation. F.G. disclosed that she had run away from home. Summage asked her how old she was, if she drank or used drugs, and why she ran away. F.G. told Summage that she was 16 years old, did not drink or use drugs, and had runaway because she was looking for an adventure. At some point during the drive, Summage told F.G. that his name was "Leo." He further told her that Leo was short for his actual name and told her what it was. He also offered to let F.G. look at his driver's license, but she did not look at it because "it seemed weird." F.G. testified that she could not remember what the name Leo was short for, but knew that it was something unusual.

When F.G. and Summage arrived in Summage's friend's neighborhood, he tried calling the friend, but the friend did not answer. They remained in the neighborhood for approximately five minutes and then left. When F.G. again told Summage that she wanted to go to Wal-Mart, Summage said Wal-Mart was far from where they were and that he wanted money for gas. F.G. gave him $4 and some change and he drove to a gas station. Summage did not put gas in his car, but instead went inside the gas station and bought something. F.G. did not know what he bought. When he returned, F.G. again told Summage that she wanted to go to Wal-Mart, at which time Summage asked F.G. if she knew how to make money. F.G. construed the question as a request for sex and said "no." Summage then told F.G. that because Wal-Mart was far away, she would have to give him something to get there. F.G. again construed Summage's statement as a request for sex and she said "no." Summage next asked F.G. if she knew where they were. She said that she did not know and she attempted to get out of the car. When F.G. opened the passenger door and started to get out, Summage grabbed her and pulled her into the car. Summage told F.G. that she could "either give it to [him] or [he] can take it." Summage then drove to a nearby parking lot. While Summage drove, he held onto F.G. as she tried to get away. After pulling into the parking lot, which was dark and had little lighting, Summage threw F.G. into the backseat. She landed on her back with her head on the driver's side of the car. Summage then climbed into the backseat and was in a kneeling position over F.G. F.G. attempted to push Summage away and get out of the car, but he told her that if she fought him he would "fuck [her] up." Summage removed his long-sleeved shirt and then pulled down F.G.'s pants and underwear far enough to remove one pant leg and one side of her underwear. Summage then pulled his pants and underwear down and told F.G. "[she] was lucky . . . that [he] was doing it and not someone else because he was going to use a condom." Summage then tore open a condom and threw the wrapper on the back dash of the car. Summage attempted to penetrate F.G.'s vagina with his penis but was unsuccessful at first, which F.G. testified was painful. F.G. told Summage to stop, but he did not. F.G. testified that Summage repositioned her on the backseat and successfully penetrated her vagina with his penis. She also testified that Summage may have used saliva to lubricate her, but she was not sure. F.G. testified that as this was happening, Summage reminded her that she told him she was looking for an adventure. After Summage was done, he put his clothes on, exited the car through the passenger-side back door, and walked around to the driver's side of the car and got in. F.G. put on her pants and climbed back into the front passenger's seat. She testified that she did not try to run away from Summage because she was scared and did not know where she was.

After F.G. and Summage were both back in the front seat of the car, Summage told F.G. that men would pay $300 to have sex with her. Summage also told F.G. he would take her to the

- 3 -

bus station and buy her a ticket to Chicago. She had told Summage prior to the assault that she liked Chicago.

Around 1 or 2 a.m. on April 7, 2013, Summage dropped F.G. off at the bus station. He gave her a phone number and told her to call that number to get the confirmation number for the bus ticket. After F.G. was at the bus station for an hour she called the phone number Summage gave her. She testified that someone answered, but told her she had the wrong number. F.G. testified that she felt hopeless and decided to try to kill herself by swallowing about 15 of her antidepressant medication pills. Shortly after taking the pills, F.G. became ill and vomited. She later purchased food from the vending machines with the $3 she had left, and called her ex-boyfriend from a pay phone, but he did not answer.

F.G. did not tell anyone in the bus terminal that she had been sexually assaulted because she did not want anyone to know she had run away. She thought that if she told someone about the assault, she would have to go back home, which she did not want to do.

Around 9 p.m. on April 7, 2013, approximately 19 to 20 hours after being dropped off at the bus station, F.G. was approached by a security guard. After initially lying to the security guard, F.G. told him her name and he contacted the Omaha Police Department.

Shortly thereafter, Omaha Police Officer Sean Quinlan and his partner arrived at the bus terminal. Quinlan spoke with F.G. for about an hour, initially asking general questions about her running away from home. Quinlan noted that F.G. was really quiet and timid and was not making much eye contact. As Quinlan continued talking with F.G., she became more emotional and appeared visibly shaken. F.G. eventually disclosed the assault to Quinlan. F.G. advised Quinlan that her attacker was clean-shaven, wore glasses, had short hair, a stocky build, and drove a gray-colored car. Based on the information F.G. provided to Quinlan, F.G. was transported to a hospital for a sexual assault exam.

Once F.G. arrived at the hospital, she and her parents met with Jennifer Tran, a sexual assault nurse examiner. Tran explained her role in providing medical care and conducting a forensic examination. After obtaining F.G.'s medical history from F.G. and her parents, Tran asked F.G. to describe the assault. Tran testified that it is important to receive an accurate account of the assault for purposes of diagnosis and treatment. Tran also advised that it is important to know who assaulted the victim because there is a need to ensure the perpetrator is not a family member and it also guides the care plan in terms of treatment for sexually transmitted diseases. F.G. gave Tran a history of the assault, and Tran testified that she relied on its accuracy for treatment and diagnosis.

Over Summage's hearsay objection, Tran testified that F.G. told Tran she had run away from home and had been picked up by an African-American male, who said his name was "Leo." F.G. said as they drove, Summage first tried to force her onto his lap, and then pushed her into the backseat. F.G. said she remembered being somewhere near 78th Street and the interstate in a parking lot, where Summage got into the backseat with her and pulled off one of her pant legs and one side of her underwear. F.G. told Tran that Summage said he would hurt her or beat her if she tried to fight him. Tran testified that F.G. told her that Summage then pulled down his pants, put on a condom, and tried to penetrate her vaginally with his penis. F.G. told Tran that Summage was unsuccessful at first and that it hurt, but that he continued to try and was eventually successful. F.G. said Summage stopped on his own and put on his clothes. He then told her that he would buy

her a bus ticket to Chicago and he took her to the bus station and dropped her off. F.G. told Tran that she was at the bus station the entire day, until a police officer approached her and asked if she was a runaway.

After F.G. described the assault to Tran, Tran did a physical examination of F.G. During the exam, Tran went over F.G.'s body with a Wood's lamp, a luminescent blue-light source that identifies bodily fluids typically invisible to the naked eye. Tran identified a glowing area on F.G.'s right buttock, which she swabbed and placed in the sexual assault kit. Tran then combed F.G.'s pubic hair, collected vaginal and anal swabs, and conducted a pelvic exam. During the pelvic exam, Tran noticed a tear near the opening of F.G.'s vagina, which appeared to be fresh. Tran testified that the type and location of vaginal tear suffered by F.G. is a common injury found in sexual assault victims. Tran stated that based on her training and experience, the results and findings of her examination were consistent with F.G.'s history of the assault.

After Tran completed the exam, she collaborated with a physician to discuss a treatment plan for F.G. F.G. was then provided treatment for potential sexually transmitted diseases. Tran also testified that she was concerned about F.G.'s mental health because she had fresh cut marks from a razor, so a behavioral health consult was ordered. F.G. was subsequently admitted to inpatient psychiatric care.

The sexual assault kit collected from F.G. was sent to a laboratory for testing done by Joseph Choquette. Three samples were tested: vaginal swabs, a swab from the glowing area on F.G.'s buttocks, and F.G.'s underwear. Choquette determined the vaginal swabs contained a full DNA profile from a single female source. Choquette noted that the use of a condom during intercourse greatly reduces the likelihood of locating a second source in a vaginal swab. He further testified that when no semen is present, the overwhelming number of female cells in a vaginal swab make it difficult to generate a male profile off of skin cells or saliva alone.

Testing done on the swab from the glowing area on F.G.'s buttocks yielded a partial DNA profile, but the profile was inconclusive and a contributor could not be determined. Testing done on the waistband of F.G.'s underwear identified the presence of two DNA profiles and F.G. was the major contributor. The minor contributor's DNA profile did not contain enough information to make a conclusive finding.

Omaha Police Officer Sarah Spizzirri was assigned to the investigation and interviewed F.G. on April 17, 2013. F.G. provided Spizzirri with a description of the man who had sexually assaulted her. F.G. said her attacker wore glasses, was bald or balding, and drove a dark-colored two-door car. F.G. told Spizzirri she did not see any tattoos on her attacker because it was too dark.

During her investigation, Spizzirri obtained video surveillance footage from inside and outside the Kwik Shop on April 6, 2013. The DVD containing the surveillance was entered into evidence. Spizzirri also spoke with Jimerson, who provided information regarding the car and identified the person from the surveillance footage as "Leo." Using the name "Leo" and a picture taken from the surveillance footage, Spizzirri was able to identify Summage as the suspect. Spizzirri showed F.G. a photo lineup with six pictures, which included a photo of Summage that was 8 years old. F.G. was unable to identify her attacker from the photo lineup. F.G. did identify Summage as her attacker at trial.

At the conclusion of the State's evidence, Summage motioned to dismiss the case based on insufficient evidence, which the trial court overruled. The case was submitted to the jury and it

- 5 -

returned a guilty verdict. The district court accepted the jury's verdict and subsequently sentenced Summage to 25 to 30 years' imprisonment.

## ASSIGNMENTS OF ERROR

Summage assigns that the trial court erred in (1) failing to grant his motion to dismiss at the close of the State's case because the State presented insufficient evidence to support a conviction, (2) admitting hearsay evidence regarding the assault, and (3) imposing an excessive sentence.

## STANDARD OF REVIEW

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. McIntyre*, 290 Neb. 1021, 863 N.W.2d 471 (2015). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *State v. Vigil*, 283 Neb. 129, 810 N.W.2d 687 (2012). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *Id.*

Apart from rulings under the residual hearsay exception, we will review for clear error the factual findings underpinning a trial court's hearsay ruling and review de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds. *State v. Vigil, supra.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Berney*, 288 Neb. 377, 847 N.W.2d 732 (2014). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## ANALYSIS

*Sufficiency of Evidence.*

Summage first argues that the evidence was insufficient to support a conviction for first degree sexual assault. The evidence upon which a jury may rely in making its findings may be direct, circumstantial, or a combination thereof. *State v. Escamilla*, 291 Neb. 181, 864 N.W.2d 376 (2015). Circumstantial evidence is to be treated the same as direct evidence, and the State, upon review, is entitled to have all conflicting evidence, direct and circumstantial, and the reasonable inferences which can be drawn from the evidence viewed in its favor. *State v. Sexton*, 240 Neb. 466, 482 N.W.2d 567 (1992).

- 6 -

Pursuant to Neb. Rev. Stat. § 28-319 (Reissue 2008), "[a]ny person who subjects another person to sexual penetration without the consent of the victim . . . is guilty of sexual assault in the first degree." Summage does not dispute that F.G. was sexually assaulted. Rather, he claims the evidence was insufficient to show that he was her assailant because (1) neither he nor his vehicle matched the description provided by F.G., and (2) his DNA was not found on F.G.'s person or on her clothing.

Summage first contends that F.G.'s description of her assailant did not match his physical characteristics. The video surveillance from the Kwik Shop on April 6, 2013, shows that Summage was a stocky, African-American male with a thin or partial goatee and clean-shaven cheeks. He was wearing glasses, a long-sleeved shirt, and a baseball cap. Jimerson also testified that on the day in question, Summage was wearing glasses and a "Jordan" hat. She also testified that she knew he had tattoos "all up his arm" and possibly a couple on his neck.

F.G. told Quinlan that her attacker was clean-shaven, rather than describing him as having some facial hair. She also did not mention the man having a hat. However, a hat is easily removable. F.G.'s description of her attacker matches Summage in other regards. F.G. testified that her attacker was an African-American male who was wearing glasses. She also testified that he was wearing a long-sleeved shirt, which he took off before assaulting her. F.G. also told Quinlan that her attacker had a stocky build. Although F.G. told Spizziri that she did not see any tattoos on her attacker, she also said that it was dark in the parking lot where the assault occurred.

Summage also points out that F.G. was unable to pick him out of a photo lineup. While this is true, Spizzirri testified that the photo of Summage used in the lineup was 8 years old. Further, F.G. identified Summage as her assailant after personally observing him in the courtroom at trial. She explained that she was able to identify him at trial but not in the photo line-up because the lighting in the pictures was different.

In regard to his vehicle, Summage argues that the surveillance video from the Kwik Shop shows that he was driving a metallic, gold colored car with no front license plate. Further, Jimerson testified that Summage was driving a gold, two-door car with in-transit signs in the front and back windows. F.G., on the other hand, testified that the car was a two-door, dark colored vehicle, and that she did not notice any in-transit signs on the vehicle. She also acknowledged that she told police officers that the car was gray, and testified at her deposition that it was not a metallic car.

However, the only time F.G. saw the outside of Summage's vehicle was before she got in. She testified that the lighting was not very good at the location where Summage picked her up. She also testified that when the car pulled up next to her, she was not paying attention to the exterior color of the car. Once F.G. got into the vehicle, she remained inside the vehicle until Summage dropped her off at the bus station. Further, Officer Quinlan testified that F.G. told him the car was gray and that based on a photo of Summage's car from the surveillance video, Quinlan testified he would describe the car as "possibly a gold or a gray, silver."

Any discrepancies in F.G.'s description of Summage's physical characteristics or his vehicle were for the jury, as the trier of fact to resolve. See *State v. McIntyre*, 290 Neb. 1021, 863 N.W.2d 471 (2015) (an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact).

Summage also argues that the evidence is insufficient because his DNA was not found on F.G.'s body or her clothing despite F.G.'s assertion of vaginal penetration with his penis and

- 7 -

lubrication of her vagina with his saliva. However, the fact that his DNA was not found, does not equate to a finding that he was not F.G.'s attacker. No complete DNA profile was found on the items tested other than F.G.'s own DNA. There were partial DNA profiles found on F.G.'s buttocks and underwear but a contributor could not be identified. Choquette testified that the use of a condom would greatly reduce the likelihood of locating a second DNA source in a vaginal swab. He further testified that when no semen is present, the overwhelming number of female cells in a vaginal swab make it difficult to generate a male profile off of skin cells or saliva alone. The failure to find Summage's DNA on F.G.'s person or clothing does not mean the evidence was insufficient. There was other competent evidence to support a finding that Summage committed the crime.

Summage was standing outside the Kwik Shop talking to Jimerson when F.G. exited the store. Jimerson testified that she knows Summage as "Leo." Summage asked F.G. how she was doing and suggested to Jimerson that he should give F.G. a ride because he did not think she should be walking by herself. A few minutes later, Summage got into his vehicle, left the Kwik Shop parking lot, and headed south on 72nd Street--the same street and direction F.G. was walking. Shortly thereafter, a man matching Summage's general physical description pulled up next to F.G. in a two-door vehicle and offered to give her a ride. Once F.G. was inside the vehicle, the man said his name was "Leo" and explained that Leo was short for another name. F.G could not remember the actual name, but knew it was something unusual. Summage's first name is "Lenado." The man subsequently sexually assaulted F.G. and then took her to the bus station. F.G. identified Summage at trial as the man who picked her up and assaulted her. Viewed in the light most favorable to the prosecution, the evidence was sufficient to support Summage's conviction.

## Hearsay Evidence.

Summage next assigns that the trial court erred in admitting hearsay evidence regarding the assault. Specifically, he argues that the trial court erred in allowing Tran to testify, over Summage's objection, about statements F.G. made to Tran during the sexual assault examination describing the assault.

Summage argues that Tran's testimony was hearsay and was not admissible under the medical exception to the hearsay rule because the statements were not made for purposes of medical diagnosis or treatment as required by Neb. Rev. Stat. § 27-803(3) (Cum. Supp. 2014). Section 27-803(3) provides a hearsay exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Rule 803(3) is based on the notion that a person seeking medical attention will give a truthful account of the history and current status of his or her condition in order to ensure proper treatment. *State v. Vigil*, 283 Neb. 129, 810 N.W.2d 687 (2012).

In order for statements to be admissible under rule 803(3), the party seeking to introduce the evidence must demonstrate (1) that the circumstances under which the statements were made were such that the declarant's purpose in making the statements was to assist in the provision of medical diagnosis or treatment and (2) that the statements were of a nature reasonably pertinent to medical diagnosis or treatment by a medical professional. *Id.* However, the statement need not be solely for the purpose of medical diagnosis or treatment; a statement is generally considered admissible under the medical purpose hearsay exception if gathered for dual medical and

- 8 -

investigatory purposes. See *id.* The fundamental inquiry is whether the statement, despite its dual purpose, was made in legitimate and reasonable contemplation of medical diagnosis or treatment. *Id.*

In *State v. Vigil, supra*, the Court held that statements made by a child victim of sexual abuse to a forensic interviewer in a medical setting may be admissible under rule 803(3) even though the interview has the partial purpose of assisting law enforcement's investigation of the crimes.

In the present case, F.G. agreed to go to Methodist Hospital to undergo a sexual assault examination. Upon arrival, F.G. and her parents met with Tran, a sexual assault nurse examiner. Tran explained that her role was to provide medical care and to conduct a forensic examination, and explained the procedures involved in performing the examination. Both F.G. and her parents then consented to the examination. It can be reasonably inferred that F.G., who was 16 years old at the time, understood she was receiving medical treatment, which was going to include a physical examination, and that the information she provided was necessary to aid in her diagnosis and treatment. See *State v. Vaught*, 268 Neb. 316, 682 N.W.2d 284 (2004) (the appropriate state of mind of the declarant may be reasonably inferred from the surrounding circumstances).

Further, F.G.'s statements to Tran were pertinent to medical diagnosis or treatment. As noted by the court in *State v. Vigil*, 283 Neb. 129, 140-41, 810 N.W.2d 687, 697-98:

> A sexual assault victim may have injuries or may have contracted a sexually transmitted disease even though the victim feels no pain and bears no external signs of injury.
>
> Moreover, there were concerns about [the victim's] psychological health. Details of the abuse are relevant to psychological implications regardless of whether any physical injury occurred. . . . [E]valuation of the need for psychological treatment is a fundamental component of sexual assault cases and, thus, a component of medical diagnosis and treatment in such cases. Where an individual is alleged to be the victim of sexual assault, statements reasonably pertinent to medical diagnosis and treatment of both physical and psychological trauma are admissible under rule 803(3).

Tran testified it is important to receive an accurate account of the assault for purposes of diagnosis and treatment, and that she relied on F.G.'s account of the assault in her treatment and diagnosis of F.G. Based on the circumstances of the assault as described by F.G., Tran administered preventative treatment to F.G. to guard against sexually transmitted diseases. In addition, she referred F.G. for mental health services based on her recent self-harming behavior.

We conclude that F.G.'s statements to Tran were made for the purpose of medical diagnosis and treatment and thus, fell within the medical exception of the hearsay rule. Accordingly, the trial court did not err in allowing Tran to testify about F.G.'s statements regarding the assault. Summage's assignment of error is without merit.

*Excessive Sentence.*

Finally, Summage assigns that the sentence imposed by the trial court was excessive. Summage was convicted of first degree sexual assault, a Class II felony. See Neb. Rev. Stat. § 28-319(2) (Reissue 2008). Sentencing guidelines for a Class II felony provide for a maximum

of 50 years' imprisonment and a minimum of one year imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). The trial court's sentence of 25 to 30 years' imprisonment is clearly within the statutory limits, which Summage does not contest. Therefore, we need only determine whether the trial court's sentence was an abuse of discretion. See *State v. Berney*, 288 Neb. 377, 847 N.W.2d 732 (2014) (an appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court).

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime. *State v. Hunnel*, 290 Neb. 1039, 863 N.W.2d 442 (2015).

At the time of sentencing, Summage was 36 years old. He had an extensive criminal record, including adjudications as a juvenile and convictions for various offenses, such as burglary, theft by unlawful taking, third degree assault, assault and battery, false imprisonment (amended from first degree sexual assault), third degree assault, and conspiracy to distribute narcotics. Between the ages of 9 and 35, Summage had been cited and/or arrested 31 times for felony and misdemeanor offenses. The instant case is his seventh felony conviction. He has been jailed on 6 occasions and put in prison on 3 occasions. He has been put on probation 7 times; 3 times as a juvenile and 4 times as an adult. He was on federal supervised release when he was arrested and convicted for the current offense. In addition, several tests were conducted to determine the degree of risk that Summage presented to the community and the risk to recidivate. The test scores indicated he was highly likely to commit additional crimes. We conclude that the trial court did not abuse its discretion in sentencing Summage to 25 to 30 years' imprisonment.

## CONCLUSION

We conclude that the evidence was sufficient to support Summage's conviction; that F.G.'s statements to Tran were made for the purpose of medical diagnosis and treatment and thus, fell within the medical exception of the hearsay rule; and that Summage's sentence is not excessive. Accordingly, Summage's conviction and sentence for first degree sexual assault is affirmed.

AFFIRMED.

THE STATE OF NEBRASKA, ss.

I hereby certify that I have compared the foregoing copy of an opinion filed by this Court with the original on file in my office and that the same is a correct copy of the original.

IN TESTIMONY WHEREOF, I have hereunto set my hand and caused to be affixed the Seal of this Court, in the City of Lincoln.

Clerk/Deputy Clerk

COURT OF APPEALS NO.        A-15-0005

TRIAL TRIBUNAL NO.          CR13-1915

DATE OPINION FILED          November 17, 2015

DATE OPINION CERTIFIED      November 17, 2015

AO 241
(Rev. 10/07)

Page 1

## Petition for Relief From a Conviction or Sentence
## By a Person in State Custody

### (Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus)

### Instructions

1. To use this form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are asking for relief from the conviction or the sentence. This form is your petition for relief.

2. You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3. Make sure the form is typed or neatly written.

4. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5. Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a brief or arguments, you must submit them in a separate memorandum.

6. You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of

   money that the institution is holding for you. If your account exceeds $ _____ , you must pay the filing fee.

7. In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

8. When you have completed the form, send the original and two copies to the Clerk of the United States District Court at this address:

   Clerk, United States District Court for
   Address   HIS 18TH PLAZA Suite 1152
   City, State Zip Code
           Omaha , NEB 68102

9. **CAUTION:** You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

10. **CAPITAL CASES:** If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.

RECEIVED

FEB 2 4 2021

CLERK
U.S. DISTRICT COURT

Inmate Name Lenado Summage

Inmate Number 81379

Box 22500

Lincoln NE, 68542-0500

Notice: This correspondence was mailed from the Nebraska State Penitentiary.

It's contents are uncensored.

46-03-13

neopost
02/23/2021
US POSTAGE $008.5
PRIORITY
ZIP 685
041M1225

RECEIVED

FEB 24 2021

CLERK
U.S. DISTRICT COURT

Clerk of the United States District

111 S 18TH Plaza   Suite 1152

OmAhA, NEB, 68102



UNITED STATES
POSTAL SERVICE ®

USPS TRACKING #

9114 9023 0722 4523 7961 78